United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SIRNA THERAPEUTICS, INC., | No. C-06-1361 MMC |
| Plaintiff, | **ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS OR TO STAY ACTION** |
| v. | |
| PROTIVA BIOTHERAPEUTICS, INC. and MARK MURRAY, | (Docket No. 23) |
| Defendants. | |

Before the Court is the motion filed September 12, 2006 by defendants Protiva Biotherapeutics, Inc. ("Protiva") and Mark Murray ("Murray"), by which defendants seek (1) dismissal of the instant action, pursuant to Rule 12(b)(7) of the Federal Rules of Civil Procedure, for failure to join an indispensable party; (2) a stay of the instant action, pursuant to the Colorado River doctrine;[1] and (3) dismissal of the fraud claim for failure to state a claim, pursuant to Rule 12(b)(6). Plaintiff Sirna Therapeutics, Inc. ("ST") has filed opposition to the motion; defendants have filed a reply.[2] Having considered the papers

---

[1] See Colorado River Water Conservation District v. United States, 424 U.S. 800 (1976).

[2] On November 20, 2006, defendants electronically filed a letter seeking to clarify statements made at oral argument. Pursuant to the Civil Local Rules of this District, "once a reply is filed, no additional memoranda, papers or letters may be filed without prior Court approval." See Civil L.R. 7-3(d). Defendants did not seek or obtain permission from the

filed in support of and in opposition to the motion, and the arguments of counsel at the November 17, 2006 hearing, the Court rules as follows.

**BACKGROUND**

On February 1, 2005, ST and Protiva entered into a Strategic Alliance Agreement ("Agreement"), by which Protiva granted ST an exclusive license to practice certain intellectual property owned by Protiva, and by which ST granted Protiva an exclusive license to practice certain intellectual property owned by ST. (See Amended Complaint ("AC") ¶ 6 and Ex. A ¶¶ 3.1 and 4.1.) Defendant Murray, Protiva's president and CEO, signed the Agreement on behalf of Protiva. (See AC Ex. A at 46.)

As set forth in the Agreement, Protiva "developed and owns or controls intellectual property rights which relate to its proprietary Stable Nucleic Acid Lipid Particle technology ('the SNALP Technology'), with respect to which ST desire[d] to obtain an exclusive license for the research, development and commercialization of RNA interference ('RNAi')-based products (including without limitation small interfering RNA (siRNA) and non-viral vectors designed to express precursors of siRNAs in vivo) against three (3) [ST] Named Targets," as defined elsewhere in the Agreement. (See AC ¶ 9 and Ex. A at 1.)

ST alleges that throughout the negotiation of the Agreement, Protiva's officers and employees, including Murray, represented that Protiva fully controlled and owned the intellectual property rights that it was negotiating to license to ST, including the representation that Protiva "held all necessary licenses and rights from Inex Pharmaceuticals Corporation ('Inex') regarding the delivery of siRNA."[3] (See id. ¶¶ 16-20.) ST further alleges it executed the Agreement in reliance on such representations. (See id.

---

Court before filing the above-referenced letter. In any event, the statements contained in the letter do not affect the outcome of the instant order.

[3] According to Murray, Inex is a shareholder in Protiva. (See Murray Decl. ¶¶ 8-9.) Murray attests that Protiva, in January 2001, entered into an asset purchase agreement with Inex, as well as a patent license agreement with respect to certain patents owned by Inex and a sublicense agreement with respect to certain patents owned by the University of British Columbia, and Inex "took 91% of Protiva's common shares as compensation for the assets purchased." (See id. ¶ 9.)

2

¶ 21.)

According to ST, Inex had informed Protiva as early as mid-2003 that "Inex owned and controlled the rights to certain intellectual property for the delivery of siRNA that required Protiva to acquire a license from Inex for its use or dissemination." (See id. ¶ 25.) ST further alleges that Protiva has never obtained a license from Inex for such intellectual property, and that Protiva and Murray knew, at all times during the negotiation of the Agreement, that "Protiva did not own or control all the necessary licenses and rights to enter into" the Agreement with ST. (See id. ¶¶ 27-28.)

ST asserts a claim against Protiva for breach of contract, as well as a claim against Protiva and Murray for fraud and misrepresentation.

**DISCUSSION**

**A. Failure to Join Indispensable Party**

Defendants argue the instant action is subject to dismissal in its entirety, pursuant to Rule 12(b)(7), because Protiva Biotherapeutics USA, Inc. ("Protiva USA") is an indispensable party who cannot be joined in the instant action without destroying diversity jurisdiction.[4]

**1. Legal Standard**

A motion to dismiss pursuant to Rule 12(b)(7) is based on "failure to join a party under Rule 19." See Fed. R. Civ. P. 12(b)(7). Rule 19 "establishes a two-step analysis for determining who should be joined in a given action." See Aguilar v. Los Angeles County, 751 F.2d 1089, 1091 (9th Cir. 1985). "The first step, set forth in subsection (a), determines which persons should be joined, if joinder is feasible." Id. at 1091-92. "The second step of the Rule 19 analysis, set forth in subdivision (b), determines whether the action should be dismissed or proceed without the party if joinder is not feasible." Id. at 1092. "The inquiry

---

[4] Because Protiva USA and ST are both incorporated in Delaware, (see Murray Decl. ¶ 5; AC ¶ 1), diversity jurisdiction would be destroyed if Protiva USA were joined as a defendant to the instant action. See 28 U.S.C. § 1332 (setting forth requirements for diversity jurisdiction); 28 U.S.C. § 1367(b) (providing district court lacks supplemental jurisdiction over claims by plaintiffs against non-diverse parties joined under Rule 19).

1 is a practical one and fact specific, and is designed to avoid the harsh results of rigid
2 application." Makah Indian Tribe v. Verity, 910 F.2d 555, 558 (9th Cir. 1990) (internal
3 citation omitted). "The moving party has the burden of persuasion in arguing for dismissal."
4 Id.

5 Rule 19(a) provides, in relevant part, "[a] person who is subject to service of process
6 and whose joinder will not deprive the court of jurisdiction over the subject matter of the
7 action shall be joined as a party in the action if (1) in the person's absence complete relief
8 cannot be accorded among those already parties, or (2) the person claims an interest
9 relating to the subject of the action and is so situated that the disposition of the action in the
10 person's absence may (i) as a practical matter impair or impede the person's ability to
11 protect that interest or (ii) leave any of the persons already parties subject to a substantial
12 risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the
13 claimed interest." See Fed. R. Civ. P. 19(a). Although courts of appeals commonly use the
14 term "necessary" to describe persons who should be joined as parties pursuant to Rule
15 19(a), the Ninth Circuit has recognized that "'necessary' is too strong a word, for it is still
16 possible under Rule 19(b) for the case to proceed without the joinder of the so-called
17 'necessary' absentee." See Equal Employment Opportunity Commission v. Peabody
18 Western Coal Co., 400 F.3d 774, 779 (9th Cir. 2005).

19 Rule 19(b) provides that if a necessary party under Rule 19(a) "cannot be made a
20 party, the court shall determine whether in equity and good conscience the action should
21 proceed among the parties before it, or should be dismissed, the absent person thus being
22 regarded as indispensable." See Fed. R. Civ. P. 19(b). "The factors to be considered by
23 the court include: first, to what extent a judgment rendered in the person's absence might
24 be prejudicial to the person or those already parties; second, the extent to which, by
25 protective provisions in the judgment, by the shaping of relief, or other measures, the
26 prejudice can be lessened or avoided; third, whether a judgment rendered in the person's
27 absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the
28 action is dismissed for nonjoinder." Id. "Indispensable parties under Rule 19(b) are

persons who not only have an interest in the controversy, but an interest of such a nature that a final decree cannot be made without either affecting that interest, or leaving the controversy in such a condition that its final termination may be wholly inconsistent with equity and good conscience." EEOC v. Peabody, 400 F.3d at 780.

### 2. Discussion

Defendants argue Protiva USA is a necessary party, pursuant to Rule 19(a)(2), on the ground that Protiva USA has an "an interest relating to the subject of the action" and disposition of the action in its absence may "as a practical matter impair or impede [its] ability to protect that interest." See Fed. R. Civ. P. 19(a)(2). In particular, defendants submit evidence that Protiva USA, a wholly owned subsidiary of Protiva, was created "for the express purpose of conducting Protiva's business affairs in the United States." (See Murray Decl. ¶¶ 5-6.) Murray attests that, "[i]n particular, Protiva USA was formed for the purpose of obtaining U.S. venture capital funding to support Protiva's research and product development, . . . and also for the purpose of marketing and distributing Protiva products in the United States, following market approval." (Id. ¶ 6.) Protiva USA is "presently actively involved in conducting Protiva's business development and clinical development activities in the United States." (See id. ¶ 7.)

Defendants argue that "[g]iven the role of Protiva USA in funding and marketing Protiva's SNALP technology in the United States, an adverse finding on Protiva's intellectual property rights to this technology would necessarily and unavoidably impair Protiva USA's interest – or indeed even extinguish said interest – in its absence." See Motion at 11:26-12:1.) Defendants fail to submit any evidence, however, that Protiva USA has any rights in the technology that is the subject of the instant action. Although not set forth expressly in defendants' motion, the thrust of defendants' argument is that Protiva USA is a necessary party because it has a substantial financial interest in marketing any Protiva products that are based on the subject technology and ultimately approved for sale in the United States, and that such financial interest could be harmed if the Court finds Protiva lacks any rights in said technology.

As ST points out, Protiva USA is not a party to the Agreement, (see AC Ex. A at 1), and Protiva USA does not claim any ownership interest in the intellectual property rights at issue therein. That Protiva USA ultimately may benefit financially if Protiva is found to have rights in said intellectual property does not suffice to demonstrate that it has an "interest" in the action for purposes of Rule 19(a); "a financial stake in the outcome of the litigation is not a legally protected interest giving rise to [Rule] 19(a)(2) necessity." See Disabled Rights Action Committee v. Las Vegas Events, Inc., 375 F.3d 861, 880-883 (9th Cir. 2004) (holding owner of arena was not necessary party in ADA suit challenging private entities' operation of rodeo at arena; rejecting argument that arena owner's financial interest in current and future contracts with defendant entities was sufficient interest under Rule 19(a)(2)); cf. Makah, 910 F.2d at 558 (noting Rule 19(a)(2) interest "must be more than a financial stake"; distinguishing "fixed fund," as to which beneficiaries may have protectable interest). Accordingly, the Court finds Protiva USA is not a necessary party to the instant action.

Assuming, arguendo, Protiva USA has demonstrated it has a sufficient interest in the instant litigation for purposes of Rule 19(a)(2), it has not demonstrated that its ability to protect such interest may be impaired or impeded if the action proceeds in its absence. As ST points out, "[a]s a practical matter, an absent party's ability to protect its interest will not be impaired by its absence from the suit where its interest will be adequately represented by existing parties to the suit." See Washington v. Daley, 173 F.3d 1158, 1167 (9th Cir. 1999) (holding Native American tribes not necessary parties to suit challenging federal regulations allocating fishing rights to tribes because federal government "can adequately represent the Tribes in this matter"). In determining whether an absent party is adequately represented by an existing party, the district court considers "whether the interests of a present party to the suit are such that it will undoubtedly make all of the absent party's arguments; whether the party is capable of and willing to make such arguments; and whether the absent party would offer any necessary element to the proceedings that the present parties would neglect." See id. (internal quotations and citation omitted).

6

1   Here, Protiva's interests are completely aligned with those of Protiva USA, its wholly
2   owned subsidiary, and Protiva has every incentive to make the same arguments that
3   Protiva USA would assert.  Defendants do not argue to the contrary, nor do they identify
4   any "necessary element" that Protiva USA would add to the proceedings.  See, e.g., Pujol
5   v. Shearson/American Express, Inc., 877 F.2d 132, 135 (1st Cir. 1989) (finding subsidiary
6   not necessary party to claims against parent corporation arising out of wrongful termination
7   of subsidiary's president because subsidiary's interests were "virtually identical" to those of
8   parent corporation and would be adequately protected by parent corporation's participation
9   in litigation).

10   Accordingly, the Court finds Protiva USA is not a necessary party to the instant
11   action, and will deny defendants' motion to dismiss the instant action pursuant to Rule
12   12(b)(7).[5]

### B. Motion to Dismiss Fraud Claim

Defendants argue that even if the Court declines to dismiss the action under Rule
12(b)(7), ST's fraud claim is subject to dismissal pursuant to Rule 12(b)(6), on the ground
ST's allegation that it relied on misrepresentations by defendants is contradicted by the
terms of the Agreement.

#### 1. Legal Standards

##### a. Rule 12(b)(6)

A motion to dismiss under Rule 12(b)(6) cannot be granted unless "it appears
beyond doubt that the plaintiff can prove no set of facts in support of his claim which would
entitle him to relief."  See Conley v. Gibson, 355 U.S. 41, 45-46 (1957).  Dismissal can be
based on the lack of a cognizable legal theory or the absence of sufficient facts alleged
under a cognizable legal theory.  See Balistreri v. Pacifica Police Dept., 901 F.2d 696, 699

---

[5] In light of the Court's finding that Protiva USA is not a necessary party under Rule 19(a), the Court does not reach the issue of whether Protiva USA is an indispensable party under Rule 19(b).  See, e.g., Disabled Rights, 375 F.3d at 883 ("Because University System is not a necessary party under Rule 19(a), we do not consider under Rule 19(b) whether the action should be dismissed because the absent party cannot be joined.").

7

(9th Cir. 1990).

Generally, a district court, in ruling on a Rule 12(b)(6) motion, may not consider any material beyond the pleadings. See Hal Roach Studios, Inc. v. Richard Feiner And Co., Inc., 896 F.2d 1542, 1555 n. 19 (9th Cir. 1990). Material that is properly submitted as part of the complaint, however, may be considered. See id. Documents whose contents are alleged in the complaint, and whose authenticity no party questions, but which are not physically attached to the pleading, also may be considered. See Branch v. Tunnell, 14 F.3d 449, 454 (9th Cir. 1994). In addition, the Court may consider any document "the authenticity of which is not contested, and upon which the plaintiff's complaint necessarily relies," regardless of whether the document is referred to in the complaint. See Parrino v. FHP, Inc., 146 F.3d 699, 706 (9th Cir. 1998). Finally, the Court may consider matters that are subject to judicial notice. See Mack v. South Bay Beer Distributors, Inc., 798 F.2d 1279, 1282 (9th Cir. 1986).

In analyzing a motion to dismiss, the Court must accept as true all material allegations in the complaint, and construe them in the light most favorable to the nonmoving party. See NL Industries, Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986). The Court may disregard factual allegations if such allegations are contradicted by the facts established by reference to exhibits attached to the complaint. See Durning v. First Boston Corp., 815 F.2d 1265, 1267 (9th Cir. 1987). Conclusory allegations, unsupported by the facts alleged, need not be accepted as true. See Holden v. Hagopian, 978 F.2d 1115, 1121 (9th Cir. 1992).

### b. Fraud

The elements of fraud are: "(a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage." See Lazar v. Superior Court, 12 Cal. 4th 631, 638 (1996).

### 2. Discussion

ST alleges that, during the negotiation of the Agreement, Protiva officers and

employees, including Murray, represented to ST that "Protiva fully controlled and owned the intellectual property rights that the company was negotiating to license to [ST] pursuant to the [Agreement]", that "Protiva held all necessary licenses and rights from Inex . . . regarding the delivery of siRNA as described in § 5.1(d)" of the Agreement, and that "Protiva held all necessary licenses and rights to perform the agreement being negotiated, including all necessary licenses and rights from Inex." (See AC ¶ 16-19.) In the Agreement itself, Protiva represented that it had "full legal right, power and authority to execute, deliver and perform its obligations" under the Agreement. (See AC ¶ 20 and Ex. A. § 10.1.) ST alleges it executed the Agreement in reliance on the above-referenced representations, (see AC ¶ 20), and that Protiva and Murray knew that such representations were false, (see id. ¶ 28).

      Defendants argue that the plain language of § 5.1 of the Agreement demonstrates that ST understood, at the time the Agreement was executed, that Protiva had not obtained all necessary rights from Inex. Section 5.1 provides for ST's payment of cash and stock to Protiva, and further provides, in § 5.1(d), that such cash and stock "shall be held in escrow pending receipt of duly executed amendments, to the Patent License Agreement, dated January 18, 2001, between Protiva and Inex Pharmaceuticals Corporation, expanding the 'Protiva Field' as defined therein to include the delivery of siRNA, such amendment to be in form and substance reasonably satisfactory to [ST]." (See AC Ex. A § 5.1(d).) Section 5.1(d) further provides that "[i]f such amendment is not obtained within six (6) months after the date [of the Agreement], the parties shall issue joint instructions to the escrow agent to return the escrow property to [ST]." (See id.) Defendants argue that ST cannot claim that it relied on the alleged misrepresentations when § 5.1 of the Agreement contemplates that Protiva might not obtain all necessary licenses and rights from Inex, and sets forth financial consequences if Protiva fails to do so.

      ST argues in response that "even though Protiva had repeatedly assured [ST] that it owned the technology for delivery of siRNA, [ST] wanted insurance that Protiva would obtain amendments to its contract with Inex so that there was no risk that at some future

9

1  date Inex would challenge [ST's] use of the technology." (See Opp. at 20:15-17.) ST
2  additionally states that "[c]reating an escrow account for [ST]'s consideration under the
3  contract was an exercise in caution and meant to cover only one aspect of the rights
4  granted to [ST]." (See id. at 20:18-19.)[6] Essentially, as clarified by ST at the hearing on
5  the instant motion, the Agreement was to go forward in any event, but ST was willing to pay
6  an additional sum for written documentation of Protiva's ownership.

7  Given ST's characterization of the parties' intent with respect to the purpose of the
8  escrow provision, the Court finds ST's allegations as to the escrow provision do not
9  preclude ST's claim of reliance on Protiva's asserted misrepresentations. In sum, it is not
10 "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would
11 entitle him to relief." See Conley, 355 U.S. at 45-46.

12 Accordingly, the Court will DENY defendants' motion to dismiss the fraud claim.

### C. Colorado River Doctrine

14 Defendants argue that if the instant action is not dismissed, it should be stayed,
15 pursuant to the Colorado River doctrine, pending completion of related state court
16 proceedings.

#### 1. Legal Standard

18 The Colorado River doctrine, pursuant to which a district court may stay its own
19 proceedings pending the outcome of related state court proceedings, is "an extraordinary
20 and narrow exception to the duty of a District Court to adjudicate a controversy properly
21 before it." See Colorado River, 424 U.S. at 813, 818. Generally, "the pendency of an
22 action in the state court is no bar to proceedings concerning the same matter in the Federal
23 court having jurisdiction." See id. at 817 (internal quotation and citation omitted). A district
24 court may stay a proceeding in favor of pending state court proceedings "only in the
25 exceptional circumstances where the order to the parties to repair to the state court would

---

[6] ST argues that in addition to the siRNA technology referenced in the escrow provision, "[w]hat was hidden from [ST] was that Inex also staked a claim to all of the RNAi technology developed by Protiva, which technology was licensed to [ST] under the [Agreement]." (See id. at 20:19-21.)

10

clearly serve an important countervailing interest." See id. at 813.[7] A federal court may defer to a state court in the interest of "wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." See id. at 817 (internal quotation, alteration, and citation omitted).

In determining whether to stay a federal action in favor of pending state court proceedings, pursuant to the Colorado River doctrine, the district court considers such factors as "(1) whether either court has assumed jurisdiction over a res; (2) the relative convenience of the forums; (3) the desirability of avoiding piecemeal litigation; . . . (4) the order in which the forums obtained jurisdiction[,] . . . (5) whether state or federal law controls[,] . . . (6) whether the state proceeding is adequate to protect the parties' rights," and (7) "whether the second suit . . . is an attempt to forum shop or avoid adverse rulings by the [first] court." See Nakash v. Marciano, 882 F.2d 1411, 1415, 1417 (9th Cir. 1989). "These factors are to be applied in a pragmatic and flexible way, as part of a balancing process rather than as a mechanical checklist." Id. at 1415 (internal quotations and citations omitted). "No one factor is necessarily determinative; a carefully considered judgment taking into account both the obligation to exercise jurisdiction and the combination of factors counselling against that exercise is required." Colorado River, 424 U.S. at 818. Moreover, "[t]he weight to be given to any one factor may vary greatly from case to case, depending on the particular setting of the case." See Moses H. Cone Memorial Hospital v. Mercury Construction Corp., 460 U.S. 1, 16 (1983). Finally, the above-referenced list of factors "is not exclusive and . . . other factors could be considered." See Nakash, 882 F.2d at 1416.

### 2. Federal and State Lawsuits at Issue

#### a. Federal Lawsuit

The instant action was filed in federal court on February 23, 2006. As noted, ST

---

[7] When exercising its discretion under the Colorado River doctrine, the district court must stay rather than dismiss the federal proceeding to ensure that the federal forum will remain open if for some unexpected reason the state forum turns out to be inadequate. See Attwood v. Mendocino Coast District Hospital, 886 F.2d 241, 243 (9th Cir. 1989).

11

asserts herein a claim against Protiva and Murray for breach of the February 1, 2005 Agreement between ST and Protiva, as well as a claim for fraud and misrepresentation based on alleged misrepresentations by Protiva and Murray during the negotiation of the Agreement. In particular, ST alleges, Protiva knew it did not have a license from Inex to "certain intellectual property for the delivery of siRNA," (see AC ¶ 25), when Protiva represented to ST that Protiva "owned or controlled all necessary licenses and rights to the intellectual property detailed in the [Agreement]," (see AC ¶ 29).

### b. State Lawsuits

Defendants contend two state court lawsuits are related to the instant action.

### i. First State Lawsuit

Protiva and Protiva USA filed a complaint against ST in the California Superior Court for the City and County of San Francisco ("ST state court action").[8] On August 3, 2006, an amended complaint was filed therein, in which Protiva and Protiva USA assert causes of action against ST for breach of contract, intentional misrepresentation, misappropriation of trade secrets, unfair competition, false advertising, fraud, constructive trust, and for declaratory relief. (See Howard Decl. Ex. A.) The causes of action are based, inter alia, on ST's conduct in connection with the negotiation and execution of the Agreement, as well as its performance under the Agreement. In particular, Protiva and Protiva USA[9] allege ST fraudulently entered into the Agreement without intent to perform, and misappropriated confidential technology that Protiva disclosed to ST pursuant to the Agreement, including the technology for the delivery of siRNA at issue in the federal lawsuit. (See, e.g., id. ¶¶ 8, 10, 14-15, 24-25.)

---

[8] Defendants state, without citation to evidence, that the complaint was filed on March 27, 2006.

[9] The complaint does not allege any specific interest of Protiva USA, other than to state that Protiva USA "is the beneficiary in the United States of the business and activities of its Canadian parent company, Protiva," and that ST's acts "have damaged the interests of Protiva (USA) as well as the interests of Protiva." (See id. ¶ 2.)

**ii. Second State Lawsuit**

Protiva, Protiva USA, and Murray filed a separate action in the California Superior Court for the City and County of San Francisco ("Inex state court action") against Inex and Timothy Ruane ("Ruane"), an officer of Inex. (See Howard Decl. Ex. B.) In the verified first amended complaint, filed September 8, 2006, the plaintiffs in the Inex state court action assert causes of action against Inex and Ruane for intentional interference with contract, defamation, and slander of title. (See id.) In particular, the plaintiffs in the Inex state court action allege that Inex and Ruane wrongfully interfered with Protiva's Agreement with ST by making false statements to ST with respect to Protiva's title to rights in its SNALP technology for the delivery of siRNA.[10] (See id. ¶¶ 13, 76, 89.)

**3. Discussion**

The Court turns to the Colorado River factors. As an initial matter, the Court notes that the Colorado River doctrine applies only where the state and federal proceedings are "substantially similar." See Nakash, 882 F.2d at 1416. There is no argument that the proceedings at issue in the instant action are not substantially similar. Further, because all three actions are based on the parties' negotiation of, performance under, and/or conduct in connection with the Agreement, the Court finds the actions are substantially similar. See id. (finding actions at issue therein substantially similar because they "concern how the respective parties . . . conducted themselves since [plaintiff] purchased a portion of Guess [from defendant]"; rejecting argument that cases not substantially similar if state action based on allegations of wrongdoing by one party and federal action based on allegation of wrongdoing by other party).

**a. Jurisdiction Over Res**

The first factor, whether either court has assumed jurisdiction over a res, see id. at 1415, has no relevance to the instant action, as there is no res at issue.

---

[10] Protiva previously filed a similar action, which remains pending in the Supreme Court of British Columbia ("Canadian action"), against Inex, Ruane, and other current and former officers of Inex. (See ST's Request for Judicial Notice Ex. B.) Protiva USA and Murray are not parties to the Canadian action.

### b. Relative Convenience of the State and Federal Forums

The second factor is the relative convenience of the federal and state forums. See id. Because the federal and state courts are located in the same city, one block apart, the state and federal forums are equally convenient to the parties.

Accordingly, the second factor is neutral.

### c. Piecemeal Litigation

The third factor is the desirability of avoiding piecemeal litigation. See id. "Piecemeal litigation occurs when different tribunals consider the same issue, thereby duplicating efforts and possibly reaching different results." American Int'l Underwriters, (Philippines), Inc. v. The Continental Ins. Co., 843 F.2d 1253, 1258 (9th Cir. 1988). "A correct evaluation of this factor involves considering whether exceptional circumstances exist which justify special concern about piecemeal litigation." See The Travelers Indemnity Co., 914 F.2d 1364, 1369 (9th Cir. 1990).

Here, the courts in both the federal action and the ST state court action will be required to determine the scope of the parties' obligations under the Agreement. Additionally, in the ST state court action, ST has raised, as an affirmative defense, the identical asserted breach of the Agreement by Protiva that is at issue in the federal action. (See Hoffman Decl. Ex. C at 14 (Thirteenth Affirmative Defense). Further, all three actions include the issue of whether Protiva has obtained any rights from Inex in the subject technology. Because the federal and state courts necessarily will consider the same issues, piecemeal litigation will occur, thus raising a substantial danger of inconsistent judgments if the instant action is not stayed. See American Int' Underwriters, 843 F.2d at 1258.

Accordingly, this factor weighs in favor of a stay.

### d. The order in which the respective forums obtained jurisdiction

In considering the fourth factor, the order in which the federal and state forums obtained jurisdiction, see Nakash, 882 F.2d at 1416, the issue "should not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has

been made in the two actions." See Moses H. Cone Memorial Hospital, 460 U.S. at 21. Here, although the federal action was filed before either of the two state court actions, nothing of substance has occurred in the instant action. By contrast, a November 2007 trial date has been set in the ST state court action,[11] whereas, at the parties' joint request, a trial date of May 19, 2008 has been scheduled in the instant action.

Because the parties have placed the ST state court action on a faster track than the instant action, the Court finds this factor weighs in favor of a stay.

### e. Whether state or federal law controls

The fifth factor is whether state or federal law controls. See Nakash, 882 F.2d at 1416. "Although the presence of federal-law issues must always be a major consideration weighing against surrender, the presence of state-law issues may weigh in favor of that surrender only in some rare circumstances." Travelers, 914 F.2d at 1370. Where the federal action involves "routine issues of state law – [such as] misrepresentation . . . and breach of contract – which the district court is fully capable of deciding, there are no such 'rare circumstances'." See id. Here, no issues of federal law are raised in the federal action, and there is no contention that the state-law issues raised in the federal action are other than "routine."

Accordingly, this factor is neutral.[12]

### f. Adequacy of state proceeding

The sixth factor is whether the state proceeding is adequate to protect the parties' rights. See Nakash, 882 F.2d at 1415. "This factor involves the state court's adequacy to protect federal rights, not the federal court's adequacy to protect state rights." Travelers, 914 F.2d at 1370 (emphases in original). Here, as noted, there are no federal rights at issue, and there is no contention that the state court proceedings are inadequate to protect

---

[11] The parties informed the Court of this date at the hearing on the instant motion.

[12] Although the parties dispute whether California or Colorado law applies to the state law claims asserted in the instant action, they cite no authority suggesting the existence of a choice-of-law question has any relevance with respect to the Colorado River analysis.

15

1 the parties' rights.

2     Accordingly, this factor is essentially neutral.

### g.  Forum shopping

"[F]orum shopping weighs in favor of a stay when the party opposing the stay seeks to avoid adverse rulings made by the state court or to gain a tactical advantage from the application of federal court rules."  Travelers, 914 F.2d at 1371; see also Nakash, 882 F.2d at 1417 (finding forum shopping weighed in favor of stay where party opposing stay filed federal action after three-and-a-half years of proceedings in state court action); American Int'l Underwriters, 843 F.2d at 1259 (finding forum shopping weighed in favor of stay where party opposing stay filed federal action after two-and-a-half years of proceedings in state court action because it believed Federal Rules of Evidence were more favorable than state rules).  As the instant action was filed prior to either of the state court actions, there is no argument that ST filed the instant action to avoid adverse rulings made by the state court. Additionally, there is no argument that ST filed the instant action to gain a tactical advantage from the application of federal court rules.

    Rather, defendants argue ST filed the instant action in an improper race to the courthouse.  In particular, defendants argue that ST failed to comply with the Agreement's dispute resolution provisions, by filing the instant action rather than seeking a meeting of the parties to attempt the resolve the dispute informally.  (See Murray Decl. ¶ 12; AC Ex. A § 12.1 ("If a dispute or difference arises between the parties relating to the interpretation or performance of th[e] Agreement . . . , the parties agree to hold a meeting within no more than twenty (20) business days following a written call for such meeting by either party . . . to attempt in good faith to negotiate a resolution of the dispute prior to pursuing other available remedies.")  The Ninth Circuit, however, has rejected the argument that a "race to the courthouse" is relevant for purposes of the Colorado River doctrine, stating it finds "nothing invidious about a plaintiff filing suit in federal court before his opponent files a similar suit in state court."  See Mobil Oil Corp. v. City of Long Beach, 772 F.2d 534, 542

(9th Cir. 1985).[13]

Accordingly, this factor is neutral.

### 4. Conclusion

While cognizant of the admonition that "[o]nly the clearest of justifications" merits a stay under the Colorado River doctrine, see Colorado River, 424 U.S. at 818, the Court finds such justification exists herein.

The issues in the federal and state court actions are substantially entangled and, as discussed above, there is a corresponding substantial likelihood of duplication of efforts by the federal and state courts, and a danger of inconsistent judgments. The Court finds the desirability of avoiding piecemeal litigation, coupled with the parties' expressed desire to try the ST state court action prior to the federal action, justifies a stay of the instant action.

Accordingly, the Court will GRANT defendants' motion to stay the instant action pursuant to the Colorado River doctrine.

## CONCLUSION

For the reasons set forth above, defendants' motion is granted in part and denied in part, as follows:

1. To the extent defendants seek dismissal of the instant action for failure to join an indispensable party, the motion is DENIED.

2. To the extent defendants seek dismissal of the fraud claim pursuant to Rule 12(b)(6), the motion is hereby DENIED.

3. To the extent defendants seek a stay of the instant action, pursuant to the Colorado River doctrine, pending resolution of related state court proceedings, the motion is hereby GRANTED, and the instant action is hereby STAYED pending resolution of the

---

[13] Defendants submit evidence, (see Murray Decl. ¶ 12), that the instant action was filed in contravention of the above-referenced dispute resolution provision of the Agreement, and argue that ST's asserted breach serves to distinguish the instant case from Mobil. Although defendants cite no authority holding that a party's failure to engage in contractually-required alternative dispute resolution procedures prior to filing suit is a relevant factor in the Colorado River analysis, to the extent such evidence may be considered as an "other factor," see Nakash, 882 F.2d at 1416, it provides additional support for a stay of the instant action.

ST and Inex state court actions. No later than June 1, 2007, and at six month intervals thereafter, the parties shall file a joint status conference statement notifying the Court of the status of said state court actions.

This order terminates Docket No. 23.

**IT IS SO ORDERED.**

Dated: December 1, 2006

MAXINE M. CHESNEY
United States District Judge